# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CAROLYN COLE,                                )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )            1:22CV734
                                             )
GERALD V. MONTGOMERY and                     )
DOROTHY J. MCMICHEN, ESQ.,                    )
                                             )
                    Defendants.              )
                                             )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

*Pro se* Plaintiff Carolyn Cole brings this action alleging that her former husband, Defendant Gerald Montgomery, and his divorce lawyer, Defendant Dorothy McMichen, acted unlawfully during a sixteen-year divorce proceeding in Florida Family Court. (*See generally* ECF No. 1.) Before the Court is Defendant's Motion to Dismiss the Complaint made pursuant to Rules 9(b), 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8.) For the following reasons, the Court will grant Defendant's motion.

## I.    BACKGROUND

According to the Complaint, Plaintiff Cole initiated divorce proceedings against Defendant Montgomery in Florida in 2006.[1] (ECF No. 1 ¶ 1.) A Florida court granted a

---

[1] Because Plaintiff is *pro se*, the Court "must construe her complaint liberally, thus permitting a potentially meritorious case to develop if one is present." *Chrisp v. Univ. of N.C.-Chapel Hill*, 471 F. Supp. 3d 713, 715–16 (M.D.N.C. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

divorce in 2009, however, under a bifurcated process, the court retained jurisdiction to oversee division of marital property. (*Id.* ¶¶ 1, 18.) As of the September 2022 filing of the Complaint in this case, the division of assets had not yet been completed in Florida. (*Id.* ¶ 1.)

Plaintiff alleges here that over the past decade and a half that the divorce proceeding has been pending in Florida, the Defendants Montgomery and McMichen worked together to hide and squander assets that ought to be subject to equitable division in Florida. (*See generally id.*) The Complaint sets out two strands of alleged conduct through which Plaintiff alleges the hiding and squandering of assets occurred. First, Plaintiff alleges that there were improper sales of her real property in North Carolina and/or that her real property in North Carolina was used to commit various frauds including mortgage fraud.[2] (*Id.* ¶ 6.) Second, Plaintiff alleges that Defendants then made false representations to the Florida court about the disposition of the real property in North Carolina.[3] (*See, e.g., id.* ¶ 18.) The Court notes that the Complaint also alludes to events in South Carolina involving an ethics and/or election issue, (*id.* ¶ 68), however, the Court has been unable to determine what the connection may be between the ethics and/or election issue in South Carolina and the claims asserted in the Complaint.

Plaintiff's Complaint lists seventeen[4] causes of action denominated as follows:

---

[2] The Complaint frequently alleges that Defendant Montgomery was an uncharged co-conspirator in a mortgage fraud case that was prosecuted in this district, *United States v. Oasis Mortgage Co., Inc.*, No. 03-CR-454 (M.D.N.C.). (*E.g.*, ECF No. 1 ¶ 17.)

[3] Relatedly, Plaintiff also alleges that Defendants bribed court officers in Florida to treat Defendant Montgomery favorably in the divorce proceedings. (ECF No. 1 ¶¶ 23, 25, 86–88.)

[4] The last cause of action in the Complaint is titled a "Nineteenth" cause of action. (ECF No. 1 at 20.) The Complaint's numbering skips causes fourteen and fifteen, (*id.* at 18–19); thus, there are only seventeen causes of action listed in the Complaint.

1. Violation of False Identification of Crime Control Act of 1982, 18 U.S.C. §§ 1028, 1738
2. Fraud
3. Breach of Contract Accompanied by Fraudulent Acts
4. Defamation of Credit
5. Slander of Title
6. Trespass to Try Title
7. Unfair Trade Practices under North Carolina, South Carolina, and Florida law
8. Violation of Federal Trade Commission Act, 15 U.S.C. 45 § 5
9. Unfair Debt Collection Practices, 15 U.S.C. § 45
10. Violation of the First Amendment, 42 U.S.C. § 1983
11. Violation of Fourth Amendment Due Process, 42 U.S.C. § 1983
12. Deprivation of Property, 42 U.S.C. § 1983
13. Conspiracy
14. Obstruction of Justice, 42 U.S.C. § 1985
15. Depriving Person of Rights, 42 U.S.C. § 1985
16. Deprivation of Rights, 42 U.S.C. § 1986
17. Abuse of Process, Malicious Prosecution, 42 U.S.C. § 1983
(*Id.* ¶¶ 28–85.)

Based on these claims, Plaintiff seeks damages, injunctive relief, attorney's fees, and for the Florida divorce action to be removed to this Court. (*Id.* ¶¶ 22, 95.)

Defendants argue that all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) because this Court lacks subject matter jurisdiction; pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction; pursuant to Rule 12(b)(6) because Plaintiff has failed to state any claims upon which relief can be granted; and pursuant to Rule 9(b) because, to the extent Plaintiff alleges fraud, the Complaint does not state the circumstances of the fraud with sufficient particularity. (ECF No. 8 at 1–2.)

## II.      STANDARD OF REVIEW

### A.      Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) raises the question of "whether [the claimant] has a right to be in the district court at all and whether the court

3

has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). A defendant may present a motion to dismiss for lack of subject matter jurisdiction either by contending that the complaint does not sufficiently allege jurisdiction, or by contending that the allegations in the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Unless a defendant pursues the latter method and attacks the truth of the allegations, a court takes them as true and "in effect, . . . afford[s] the same procedural protection as [the plaintiff] would receive under a Rule 12(b)(6) consideration." *Id.* A court should grant a motion under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Rule 12(b)(2)

A challenge to personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure is a question of law, and the plaintiff bears the ultimate burden of proving jurisdiction. *See Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). The Fourth Circuit has observed that the plaintiff's burden of proof "varies according to the [procedural] posture of [the] case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268.

Where the court decides a pretrial personal jurisdiction question without conducting an evidentiary hearing—"reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint"—a plaintiff "need only make a prima facie showing of personal jurisdiction" to withstand a jurisdictional challenge. *Id.* "[A] plaintiff makes a prima facie showing of personal jurisdiction by presenting

4

facts that, if true, would support jurisdiction over the defendant." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 561 (4th Cir. 2014) (citing *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003)). When considering whether the plaintiff has made a prima facie showing of jurisdiction, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 558 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

### C.    Rule 12(b)(6)

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard under Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The court "view[s] the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a motion to dismiss, "a [district] court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Generally, on a Rule

12(b)(6) motion to dismiss, a court cannot consider documents beyond the complaint without converting the motion into a motion for summary judgment.  *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013).  The court can, however, properly consider documents attached to or referenced in the complaint, as well as those attached to the motion to dismiss, so long as those documents are "integral to and explicitly relied on in the complaint."  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

### D.     Rule 9(b)

Where a Plaintiff alleges fraud or mistake, "[n]ot only must the[] elements [of fraud] be pled, but under Fed. R. Civ. P. 9(b) 'the circumstances constituting fraud or mistake shall be stated with particularity . . . .'"  *TSC Rsch., LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 543 (M.D.N.C. 2008).  "Courts construe this to mean that plaintiffs must set out the 'time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'"  *Id.*  (quoting *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997)).  In applying this rule, the Fourth Circuit has cautioned that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

6

## III.  DISCUSSION

### A.    The Court has subject matter jurisdiction except with respect to Plaintiff's attempt to bring criminal charges against Defendants.

Initially, the Court notes that its federal question jurisdiction is implicated by the claims that Plaintiff purports to bring pursuant to various federal statutes.  The Court also appears to have diversity jurisdiction over Plaintiff's state law claims because Plaintiff has alleged that she is a resident of North Carolina, the Defendants are residents of Florida, and there is an amount in controversy in this case of at least $75,000.  (ECF No. 1 ¶¶ 4–5, 18.)

Regarding subject matter jurisdiction, Defendants first argue that the Complaint should be dismissed in its entirety because it is an "attempt to circumvent any negative ruling [Plaintiff] might incur in the equitable distribution proceeding in [Florida]."  (ECF No. 9 at 9.) Plaintiff responds that this Court "is not being asked to address any matters the Florida Family Court acted upon in its final order in the dissolution of marriage case."[5]  (ECF No. 11 at 1.)

"[D]istrict courts have no original diversity jurisdiction to grant a divorce, to award alimony, to determine child custody, or to decree visitation."  *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980).  Sometimes, "court[s] perceive[ ] an attempt *de facto* to reopen and relitigate [a] prior judicial determination [of a domestic relations matter] by casting the case otherwise formally, but substantially pleading a divorce or property allocation case."  *Id.* at 1087–88

---

[5] Plaintiff filed her response in opposition to Defendants' motion after the deadline for filing such an opposition had passed.  (*See* ECF Nos. 8 (Defendants' motion filed Oct. 6, 2022); 10 (*Roseboro* letter sent to Plaintiff informing her of her right to file a response within 21 days of service of Defendants' motion); 11 (Plaintiff's opposition brief filed Jan. 12, 2023).)  Because Plaintiff is *pro se* and states in her response that she experienced health issues that prevented her from attending to this matter, (ECF No. 11 at 4), the Court finds that Plaintiff's response was filed late due to excusable neglect and will consider it.  *See* L.R. 7.3(k) ("The failure to file a brief or response within the time specified . . . shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect.").

7

(emphasis in original). While "federal courts will be alert to preclude what are genuinely divorce, alimony, or child custody and support cases from creeping around the barrier," "[n]ot all family feuds . . . fall directly into the specialized category of true domestic relations cases (primarily divorce, alimony, child custody and support)." *Id.* at 1088. The Fourth Circuit has instructed that "[a] district court may not simply avoid all diversity cases having intrafamily aspects . . . [r]ather it must consider the exact nature of the rights asserted or of the breaches alleged." *Id.* A district court must focus on whether a claim alleges a breach of a duty, whether tortious or contractual in nature, that arose solely from family relations law. *Id.* If a claim "could have arisen between strangers," then federal courts may not deny jurisdiction based on the domestic relations exception. *Id.* at 1089.

The Court finds that the domestic relations exception does not apply here. The Court finds that, despite the request to remove the Florida divorce action to federal court, Plaintiff does not seek a divorce decree or alimony, and Plaintiff's state law claims are not based on alleged violations of duties that arose from her marital relationship. Instead, Plaintiff's state law claims all appear to be variations on a claim that Defendants wrongfully took Plaintiff's property, (*see* ECF No. 1 ¶¶ 28–51), and that is a claim that can arise between strangers. Accordingly, Defendants' first subject-matter jurisdiction argument is not persuasive.

Defendants' other subject matter jurisdiction argument is that all of Plaintiff's claims that allege fraud are, in essence, criminal claims that should be dismissed because they are not appropriately brought by a private individual in a civil lawsuit. (ECF No. 9 at 9.) Plaintiff responds that she "believes the Court has subject matter jurisdiction relative to criminal activities," but does not explain why she believes this. (ECF No. 11 at 3.)

8

It is well-established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The Court finds that Plaintiff's Complaint, read liberally, alleges only one claim that is clearly criminal in nature—her first claim for violations of 18 U.S.C. § 1028 and 1738. (ECF No. 1 at 9.) The Court will therefore dismiss this claim and only this claim for lack of subject matter jurisdiction.

**B.    The Court has personal jurisdiction over Defendant Montgomery with respect to claims arising out of his alleged business in North Carolina; the Court otherwise lacks personal jurisdiction.**

Plaintiff has alleged that the Defendants in this case are individuals who reside in Florida. (ECF No. 1 ¶ 2–3, 5.) Defendants argue that this Court therefore lacks personal jurisdiction over them, and that the Complaint must be dismissed. (ECF No. 9 at 8–9.)

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather*, 773 F.3d at 558. North Carolina's long-arm statute "permits the exercise of personal jurisdiction . . . to the outer limits allowable under federal due process." *Id.*; *Dillon v. Numismatic Funding Corp.*, 231 S.E.2d 629, 630 (N.C. 1977) (holding that, by enacting North Carolina's long arm statute, the North Carolina General Assembly "intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process"). The two-prong test, therefore, "merges into [a] single

9

question," allowing the court to proceed directly to the constitutional analysis. *Universal Leather*, 773 F.3d at 558–59.

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant. *Id.* at 559. One path is general jurisdiction, "which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden*, 571 U.S. at 283 n.6. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). The other path is specific jurisdiction, which "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Walden*, 571 U.S. at 283 n.6. (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). The Fourth Circuit employs a three-prong test to determine whether the exercise of specific jurisdiction comports with the requirements of due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Universal Leather*, 773 F.3d at 559 (alteration in original) (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)).

The Court first finds that it does not have general personal jurisdiction over the Defendants because they are Florida residents. The Court therefore turns to specific personal jurisdiction.

As the Court turns to specific personal jurisdiction, the Court notes that there are essentially two controversies set out in Plaintiff's Complaint: (1) improperly disposing of property;

and (2) lying to a Florida court about improperly disposing of property. The Court uses the phrase "improperly dispose of" here to encompass all allegations regarding fraudulently claiming title to property owned by another, selling such property without authorization, using such property for the purpose of mortgage fraud, alienating property in violation of a court order, and similar acts. (*See, e.g.*, ECF No. 1 ¶¶ 6, 15, 17, 20, 25, 27.) Plaintiff argues that this Court has specific personal jurisdiction because her Complaint alleges that Defendants improperly disposed of property that included real property in Greensboro, North Carolina. (ECF No. 11 at 3.) Plaintiff has not argued that there is specific personal jurisdiction over the Defendants based on the Florida proceedings.[6] (*See id.*)

The Court concludes that acts such as selling real property located in North Carolina constitute availment of the privilege of doing business in North Carolina. Further, to the extent that a claim arises out of such availment, it would be constitutionally reasonable for a court in North Carolina to assert specific personal jurisdiction over a defendant—one who involves himself in transactions involving real property in North Carolina could reasonably expect to be haled into court in North Carolina based on those transactions.

In contrast, participating in divorce proceedings in a Florida state court is not availment of the privilege of doing business in North Carolina. Similarly, to the extent that the Complaint alleges vague ethics and/or election issues in South Carolina, these activities are not a basis for this Court to exercise specific personal jurisdiction over the Defendants in this action.

---

[6] Plaintiff also argues that this Court has personal jurisdiction because she herself is a resident of North Carolina, (ECF No. 11 at 3)—however, it is well-settled that a connection between a plaintiff and the forum state is insufficient to create personal jurisdiction over a defendant. *Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

Applying the above analysis to the allegations and claims in this case, the Court concludes that it has specific personal jurisdiction over Defendant Montgomery with respect to most claims against him. Read liberally, all but one of the claims against Defendant Montgomery arise from transactions involving real property in North Carolina. The one exception is Plaintiff's claim for "Abuse of Process, Malicious Prosecution, § 1983." (ECF No. 1 at 20). Although the caption of this claim appears to refer to a federal statute, specifically, 42 U.S.C. § 1983, the Court understands it to be a claim of abuse of process under South Carolina common law, (*id.* ¶ 84 (discussing abuse of process under South Carolina common law)), based on Defendant Montgomery allegedly causing contempt charges to be issued against Plaintiff in the Florida divorce proceedings, (*id.* ¶ 81 (allegations regarding contempt charges issued in the Florida divorce)), by allegedly lying to the Florida court about events or circumstances occurring partly in North Carolina and partly in South Carolina, (*id.* ¶¶ 80, 83). While this claim is tangentially related to alleged conduct in North Carolina, it arises from the Florida divorce proceedings. Accordingly, this Court lacks specific jurisdiction over Defendant Montgomery with respect to this claim. This Court will therefore dismiss this claim for lack of personal jurisdiction.

As for Defendant McMichen, the Court finds that it lacks specific jurisdiction over her with respect to all claims. She is allegedly Defendant Montgomery's attorney for the Florida divorce proceedings, (*id.* ¶ 3), and the factual allegations in the Complaint that mention her relate to that representation, (*see id.* ¶¶ 18, 24, 33, 80). This Court will therefore dismiss all claims against Defendant McMichen for lack of personal jurisdiction.

Having dismissed the 18 U.S.C. § 1028 and § 1738 claim for lack of subject matter jurisdiction, the abuse of process claim against Defendant Montgomery for lack of personal

jurisdiction, and all claims against Defendant McMichen for lack of personal jurisdiction, the Court now proceeds to a Rule 12(b)(6) analysis for the remaining fifteen claims against Defendant Montgomery.

### C. Plaintiff fails to state plausible claims against Defendant Montgomery.

With respect to Rule 12(b)(6), Defendants generally argue that the Complaint "is rife with conclusory statements [and] innuendo without any evidentiary support [for] any of the claims presented." (ECF No. 9 at 6.) The Court addresses each remaining claim in turn.

#### 1. Fraud

"Under North Carolina law, fraud requires a '(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Topshelf Management, Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 726 (M.D.N.C. 2015) (quoting *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007)). The heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to such a claim when it is brought in federal court. *Id.*

Reading the Complaint liberally, Plaintiff identifies Defendant Montgomery as the person who allegedly made the fraudulent misrepresentations of which she complains. (ECF No. 1 ¶ 33.) However, there are no allegations specifically addressing the time, place, and contents of any alleged fraudulent misrepresentation, or what Defendant Montgomery allegedly obtained. Plaintiff argues, without any citation to allegations in the Complaint, that "the specific fraudulent activity is captured in mortgage loan, and bank loan documents," and asks for "time to provide these documents to the Court for review and inspection." (ECF No. 11 at 3.) However, under the standard of review applicable to motions made under Rule 12(b)(6), this Court does not review materials beyond the Complaint unless they are integral

13

to and explicitly relied upon by the Complaint. The Court therefore finds that Plaintiff has not stated a plausible claim of fraud.

## 2. Breach of Contract, Accompanied by Fraudulent Acts

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000).

The Complaint alleges that Plaintiff and Defendant Montgomery "as a married couple, entered into legal mortgage loans on rental properties wherein they were jointly responsible for the mortgages, insurance, property taxes, maintenance and other expenses." (ECF No. 1 ¶ 38.) The Complaint also alleges Defendant Montgomery "in violation of that agreement . . . refinanced and cashed out on the existing mortgage loans[,] incurring bank fees, appraisal fees, realtor's commissions, and other expenses." (*Id.* ¶ 39.) Plaintiff additionally alleges that Defendant Montgomery committed fraudulent acts related to the breach of contract, and that she is therefore entitled to punitive as well as actual damages. (*Id.* ¶ 40.)

The Court finds that Plaintiff has not stated a plausible claim for breach of contract. First, Plaintiff has not alleged facts supporting the existence of a valid contract; she has only asserted a legal conclusion that there was a contract. *See Jones v. Nationwide Advantage Mortg. Co.*, No. 17-CV-189, 2018 WL 1569835, at *5 (M.D.N.C. Mar. 27, 2018) (dismissing breach of contract claim because there were "no factual allegations that there was a 'meeting of the minds' between the parties to enter into a contract" with the claimed terms). Additionally, Plaintiff has not alleged any term of the mortgage agreements that Defendant Montgomery breached by refinancing or cashing out any mortgages that they entered into together. *See*

14

*Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 9 (N.C. Ct. App. 2012) (affirming dismissal of breach of contract claims "because the allegations failed to provide even general terms of the contract which were necessary to determine whether a breach occurred").

### 3. Defamation of Credit

"To state a claim of defamation, a plaintiff must allege the following four elements: '[1] defendant made false, defamatory statements, [2] of or concerning the plaintiff, [3] which were published to a third person, [4] causing injury to the plaintiff's reputation.'"[7] *Davis v. Lewis*, No. 16-CV-340, 2018 WL 1473426, at \*6 (E.D.N.C. Mar. 26, 2018) (alterations in original) (quoting *Tyson v. L'Eggs Prods., Inc.*, 351 S.E.2d 834, 840 (N.C. Ct. App. 1987)). "A statement is defamatory if it tends 'to prejudice another in his reputation, office, trade, business, or means of livelihood.'" *Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005) (quoting *Donovan v. Fiumara*, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994)). At the motion to dismiss stage, while "the court must of course credit the plaintiff's allegation of the factual falsity of a statement," it is not enough for a plaintiff to "couch[ ] [her] allegations of falsity in vague, conclusory terms." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993); *see also Jolly*, 400 F. Supp. 2d at 861 ("In pleading a cause of action for defamation, a plaintiff must recount the allegedly defamatory statement either verbatim or at least with enough specificity to allow the Court to decide if the statement is defamatory.").

---

[7] The Court was unable to locate any North Carolina authority discussing, specifically, "defamation of credit" as a cause of action. At least one federal district court in this state has cast doubt on whether North Carolina recognizes "defamation of credit" as a distinct cause of action. *McGahren v. First Citizens Bank & Trust Co.*, No. CIV. 93-CV-143, 1997 WL 1050726, at \*4 (W.D.N.C. Aug. 1, 1997) (noting that its analysis "applie[d] to the ninth cause of action for defamation of credit, if indeed such a cause of action exists"), *aff'd*, 165 F.3d 19 (4th Cir. 1998) (unpublished). The Court therefore construes the claim that Plaintiff has denominated "Defamation of Credit" as a general defamation claim.

Under North Carolina law, a defamatory statement "that charges a plaintiff with a crime involving moral turpitude, impeaches his or her trade or business, or accuses him or her of having a 'loathsome disease'" is considered defamation *per se*. *Jolly*, 400 F. Supp. 2d at 861. Other defamatory statements are considered defamation *per quod*. *Id.* A plaintiff who claims defamation *per quod* must additionally allege and prove malice and special damages (in a case of defamation *per se*, malice and special damages are presumed). *Id.* The special damages must be for a pecuniary loss, not for humiliation. *Araya v. Deep Dive Media, LLC*, 966 F. Supp. 2d 582, 599 (W.D.N.C. 2013). "Emotional distress and mental suffering are not sufficient allegations to establish a basis for relief in cases which are only actionable *per quod*." *Id.* (quoting *Johnson v. Bollinger*, 356 S.E.2d 378, 384 (N.C. Ct. App. 1987)).

Here, Plaintiff alleges that the defamatory activity was "publish[ing] to third parties the false allegations that Plaintiff's mortgage loan accounts with [Defendant Montgomery] were delinquent." (ECF No. 1 ¶ 42.) Plaintiff claims damages for "extreme emotional distress and anguish, lost income, and incurred damage to her credit and reputation." (*Id.* ¶ 43.)

The Court finds that Plaintiff has not alleged sufficient facts to make out a plausible claim for defamation under North Carolina law. Plaintiff has not set out how the allegedly false statements about the status of her accounts with Defendant Montgomery injured her reputation. Additionally, most of the damages that Plaintiff claims are non-pecuniary damages for which she cannot recover under North Carolina law; the only pecuniary damages she seeks are for lost income, but she has not explained how Defendant Montgomery's alleged statements affected her income.

16

#### 4.    Slander of Title

"To establish a claim of slander of title, a plaintiff must show: '(1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages." *Kellis v. U.S. Bank, N.A.*, No. 16-CV-395, 2017 WL 1194360, at *7 (M.D.N.C. Mar. 30, 2017) (quoting *Broughton v. McClatchy Newspapers, Inc.*, 588 S.E.2d 20, 30 (N.C. Ct. App. 2003)).

For her slander of title claim, Plaintiff alleges "[t]hat Defendant did disparage the Plaintiff's good title, falsely and maliciously questioning and attacking her title to the aforesaid property and denying her rights to use and dominion thereover." (ECF No. 1 ¶ 45.) Plaintiff additionally alleges that "as a direct result and consequence of the Defendants' willful defamation, Plaintiff suffered extreme emotional distress and anguish, loss of income, and damage to her credit and reputation." (*Id.* ¶ 46.)

The Court finds that Plaintiff has not alleged a plausible claim for slander of title. The above quoted statements are only legal conclusions. Focusing on factual allegations in the Complaint, the Court has been unable to identify the alleged slander at issue, much less any facts setting out how that alleged slander caused the alleged damages.

#### 5.    Trespass to Try Title

In an action for trespass to try title under North Carolina law, a plaintiff "must allege and prove both title in [herself] and trespass by defendants." *Keller v. Hennessee*, 180 S.E.2d 452, 454 (N.C. Ct. App. 1971). A plaintiff "must rely on the strength of [her] own title, and not on the weakness of defendant's title." *Id.*

According to the Complaint, "Defendants did disparage and diminish the Plaintiff's title and right to the aforesaid property," and as a result "Plaintiff was denied the full use and

17

enjoyment of her property aforesaid, suffered extreme emotional distress and anguish and damage to her credit and reputation." (ECF No. 1 ¶¶ 48–49.)

The Court finds that Plaintiff has not alleged a plausible claim for trespass to try title. The Complaint alleges that Plaintiff and Defendant Montgomery jointly owned the properties at issue. (*Id.* ¶ 6.) Thus, Plaintiff essentially claims that Defendant Montgomery trespassed on his own property. To potentially advance with such a claim, Plaintiff must allege far more than the mere legal conclusions quoted above, but she does not.

6. <u>Unfair Trade Practices under North Carolina, South Carolina, and Florida law</u>

The Court notes that Defendants treat this claim as a claim brought under South Carolina law only. (ECF No. 9 at 7.) Although the Complaint uses a South Carolina caption and quotes only sections of the South Carolina Code of Laws, it also states that this claim is for violations of "North Carolina, South Carolina, and Florida laws." (ECF No. 1 at 13; *id.* at ¶ 50.) Because Plaintiff is *pro se*, the Court construes this claim liberally as brought under the laws of all three states. However, as previously discussed, specific personal jurisdiction over Defendant Montgomery in this action is based on his real estate dealings in North Carolina only. This Court lacks personal jurisdiction over Defendant Montgomery for actions arising out of his business in other states. Thus, the only claim properly before the Court here is one for violations of North Carolina's Unfair and Deceptive Trade Practices Act.

"To state a claim for unfair and deceptive trade practices a plaintiff must show: '(1) that the defendant committed an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; (3) which proximately caused actual injury to plaintiff.'" *Dealers Supply Co., Inc. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 591 (M.D.N.C. 2004)

18

(quoting *Furr v. Fonville Morisey Realty, Inc.*, 503 S.E.2d 401, 408 (N.C. Ct. App. 1998)). "Whether a particular act is unfair or deceptive, depends on the facts surrounding the transaction and the impact on the marketplace." *Id.*

In her Complaint, Plaintiff has identified a list of things that she claims that Defendant Montgomery did that were unfair or deceptive acts or practices. (ECF No. 1 ¶ 50.) The list includes things such as false billing, attempted extortion, and threats to wrongfully foreclose on properties. (*Id.*) However, the list is recited in only a conclusory fashion and Plaintiff has not alleged sufficient facts that would make the claims plausible. For example, there are no allegations describing the communications about foreclosure that Plaintiff claims were threats. The Court therefore finds that Plaintiff has not stated a plausible claim for a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

    7. <u>15 U.S.C. § 45 Claims</u>

Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce" are unlawful. There is no private right of action to enforce this provision. *E.g.*, *Baum v. Great W. Cities, Inc., of N.M.*, 703 F.2d 1197, 1209 (10th Cir. 1983) ("[P]rivate litigants cannot invoke the jurisdiction of the district courts by alleging violations of business practices proscribed by 15 U.S.C.A. § 45(a)(1)."); *J.R. v. Walgreens Boots Alliance, Inc.*, No. 20-1767, 2021 WL 4859603, at *8 (4th Cir. 2021 Oct. 19, 2021) (unpublished) (noting that "[t]hough we have not yet addressed this issue, other Circuits have uniformly found the FTCA does not contain an implied private right of action" and collecting cases). Plaintiff therefore has not stated any claims under the Act. (*See* ECF No. 1 at 13–14 (attempting to bring claims

pursuant to 15 U.S.C. § 45 for "unfair trade practice[s]" and "unfair debt collection practices").)

8. 42 U.S.C. § 1983 Claims

"To prevail on a § 1983 claim, [a plaintiff] must show that (1) they were deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of state law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). "'[M]erely private conduct, no matter how discriminatory or wrongful,' fails to qualify as [an action taken under color of state law]." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009).

Plaintiff has brought three claims against Defendant Montgomery under 42 U.S.C. § 1983. Specifically, Plaintiff claims that Defendant Montgomery deprived her of rights guaranteed to her by the First, Fourth, and Fifth Amendments. (ECF No. 1 ¶¶ 59–71.) Read liberally, the Complaint also brings a fourth § 1983 claim for conspiracy to deprive her of rights guaranteed by the Fifth and Fourteenth Amendments.[8] (*Id.* ¶¶ 72–75.) In all four claims, Plaintiff generally alleges that Defendant Montgomery deprived her of constitutional rights by actions including but not limited to: identity theft, tax fraud, mortgage fraud, intimidation, causing charges to be filed against her in legal proceedings, interfering with her ability to manage properties committed to her care by the Florida court in the divorce proceeding, diminishing the value of Plaintiff's real property, and also conspiring with unnamed third parties to do all of these things. (*See id.* ¶¶ 59–75.)

---

[8] The Complaint refers to this claim simply as "Conspiracy," describes the conspiracy as one to "commit illegal acts and/or to commit legal acts by illegal means to harm the Plaintiff," and does not refer to § 1983. (ECF No. 1 ¶¶ 72–75.) The Court understands this to be a § 1983 claim because this section of the Complaint cites *Qwest Communications Corporation v. City of Greensboro*, 440 F. Supp. 2d 480 (M.D.N.C. 2006). (ECF No. 1 ¶ 74.) *Qwest* was an action brought pursuant to § 1983. 440 F. Supp. 2d at 483.

The Court finds that Plaintiff has not plausibly alleged any claim under 42 U.S.C. § 1983 because she has alleged no facts that support that Defendant Montgomery acted under color of state law in the course of his dealings in North Carolina. Additionally, Plaintiff's allegations generally do not describe actual violations of her constitutional rights—for example, although she alleges for her Fourth Amendment claim that Defendant Montgomery acted "without . . . probable cause," her allegations do not in any way relate to a search or a seizure, or to the issuance of a warrant. (*See* ECF No. 1 ¶ 68.)

9. <u>42 U.S.C. § 1985 Claims</u>

A victim of a conspiracy to interfere with his or her civil rights has a civil remedy in 42 U.S.C. § 1985. This statute "proscribe[s] conspiracies that interfere with (a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws'; and (e) the right to support candidates in federal elections." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). "[T]he law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*

In this case, the Complaint alleges that Defendant Montgomery conspired to obstruct the due course of justice in North Carolina, Florida, and South Carolina, and that Defendant

21

Montgomery conspired to deprive Plaintiff of the equal protection of the laws.[9]  (ECF No. 1 ¶¶ 76–77 (citing 42 U.S.C. § 1985).)

The Court finds that Plaintiff has not plausibly alleged any claim under § 1985 because the Complaint lacks any factual allegations tending to show a meeting of the minds.  Moreover, a plaintiff must allege *concrete supporting facts* to proceed on a § 1985 claim.  *Simmons*, 47 F.3d at 1377.  There are no concrete supporting facts in the Complaint here.

      10.    <u>42 U.S.C. § 1986 Claim</u>

Under 42 U.S.C. § 1986, "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured."  "A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."  *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985).  Therefore, because this Court has found that Plaintiff has not plausibly alleged any claim under § 1985, this Court also finds that Plaintiff has not plausibly alleged any claim under § 1986.  *See id.* (affirming dismissal of a § 1986 claim based on dismissal of a § 1985 claim).

The Court therefore concludes that Plaintiff has failed to state any claim upon which relief can be granted and that this action must be dismissed.

For the reasons stated herein, the Court enters the following:

---

[9] The Court reiterates that it does not have personal jurisdiction over Defendant Montgomery to the extent this claim arises out of alleged business in Florida or South Carolina.

Case 1:22-cv-00734-LCB-JLW   Document 12   Filed 08/08/23   Page 22 of 23

**ORDER**

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (ECF No. 8), is **GRANTED**, and this action is **DISMISSED**.

This, the 8th day of August 2023.

/s/Loretta C. Biggs
United States District Judge